UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:13CV-01016-HBB

SHON G. MOUNT                                                                    PLAINTIFF

VS.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security                                          DEFENDANT

## MEMORANDUM OPINION
## AND ORDER

### BACKGROUND

Plaintiff Shon G. Mount ("Mount") brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security denying Mount's application for disability insurance benefits.   Both the Plaintiff (DN 14) and Defendant (DN 15) have filed a Fact and Law Summary.

Pursuant to 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73, the parties have consented to the undersigned United States Magistrate Judge conducting all further proceedings in this case, including issuance of a memorandum opinion and entry of judgment, with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed (DN 10).   By Order entered January 30, 2014 (DN 11), the parties were notified that oral arguments would not be held unless a written request therefor was filed and granted.   No such request was filed.

1

<u>FINDINGS OF FACT</u>

Mount first applied for disability insurance benefits ("DIB") and supplemental security income benefits ("SSI") on October 17, 2007, alleging a disability beginning on April 20, 2006 (Tr. 114).   That application was denied at the initial and reconsideration levels, and after a hearing, it was ultimately denied by Administrative Law Judge Paul C. Armitage on May 12, 2010 (Tr. 114, 124).   ALJ Armitage adjudicated Mount's disability for the period from April 20, 2006 through May 12, 2010, and found that Mount was not disabled.

Mount has filed a second application for DIB and SSI.   The protective filing date for Mount's second application is June 1, 2010, prior to his date last insured of December 31, 2011 (Tr. 25, 246).   He alleges disability beginning on May 13, 2010, due to Scheuermann's kyphosis, degenerative disc disease, cervical mid-back and lower back muscle spasms, rotation of the spine, compressed vertebrae, restless leg syndrome, thoracic spine and spurring height loss, panic attacks, bipolar disorder, and mood disorder anxiety (Tr. 245, 250).   Mount's application was denied initially (Tr. 134) and upon reconsideration (Tr. 146).   Subsequently, at Mount's request, an administrative hearing was conducted before Administrative Law Judge William C. Zuber on January 31, 2012, in Louisville, Kentucky (Tr. 43).   Mount and his attorney, Alvin Wax, attended the hearing (<u>Id.</u>).   Also present and testifying was Sharon Lane, an impartial vocational expert (<u>Id.</u>).

At Step One, ALJ Zuber found that Mount has not engaged in substantial gainful activity since May 13, 2010, the alleged onset date, through his date of last insured, December 31, 2010 (Tr. 28).   At Step Two, the ALJ found that Mount's thoracic kyphosis, lumbar scoliosis, obesity, panic disorder, and intermittent explosive disorder constituted severe impairments (<u>Id.</u>).   At Step Three, the ALJ found that Mount's impairments did not meet or medically equal one of the listed

2

impairments in 20 C.F.R Part 404, Subpart P, Appendix 1 (Id.).   At Step Four, the ALJ assigned

Mount a residual functional capacity ("RFC") with certain modifications, stating:

> [t]he claimant has the residual functional capacity to perform
> sedentary work as defined in 20 C.F.R. 404.1567(a) and 416.967(a)
> except he is limited to simple, unskilled, routine, non-fast paced
> work allowing a sit/stand option.   He can occasionally climb ramps
> and stairs, stoop, crouch, crawl, kneel, overhead reach, and use
> lower extremity foot controls.   He should avoid climbing ladders,
> ropes and scaffolds.   He can tolerate occasional casual
> non-confrontational contact with co-workers and supervisors but
> should avoid the general public.   Any changes in the work
> route/environment should be rare and gradually introduced.
> Moreover, the claimant can sustain concentration, persistence and
> pace for periods of 2 hours at a time.

(Tr. 30).   This RFC adopted by ALJ Zuber is generally consistent with the RFC from the 2010

ALJ decision,[1] since ALJ Zuber determined that the prior decision and its RFC determination

were binding upon his adjudication by *res judicata* and the holding of Drummond v. Comm'r of

Soc. Sec., 126 F.3d 837 (6th Cir. 1997) (Tr. 30).   Based on this RFC, ALJ Zuber determined

Mount could not perform any of his past relevant work (Tr. 36).   However, at Step Five, the ALJ

relied on the Medical Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2, in

conjunction with the vocational expert's testimony to find that there are jobs that exist in

significant numbers in the national economy that Mount can perform (Tr. 37).

Accordingly, on May 9, 2012, the ALJ issued an unfavorable decision, finding that Mount

was not disabled (Tr. 38).   The Appeals Council declined to review the ALJ's decision on August

---

1 The RFC determination previously made by ALJ Armitage on May 12, 2010, reads as follows: "I find that the claimant has the residual functional capacity to perform sedentary work capacity of lifting less than ten pounds occasionally and sitting for six of eight hours and walking or standing for two of eight hours.   The claimant requires a sit/stand option.   The claimant's ability to understand, remember, and carry out instructions to perform simple repetitive tasks is not limited.   The claimant's ability to tolerate stress and pressure of day-to-day employment is moderately limited.   The claimant's ability to sustain attention and concentration towards the performance of simple, repetitive tasks is not limited.   The claimant's ability to respond appropriately to supervision, coworkers, and work pressures in a work setting is moderately limited" (Tr. 119).

3

22, 2013 (Tr. 1-3).   At that point, the ALJ's decision became the final decision of the Commissioner.   20 C.F.R. §§ 404.955(b), 404.981, 422.210(a); *see* 42 U.S.C. § 405(h) (finality of the Commissioner's decision).   Mount now seeks judicial review in this Court (DN 1).

## STANDARD OF REVIEW

Review by the Court is limited to determining whether the findings set forth in the final decision of the Commissioner are supported by "substantial evidence," 42 U.S.C. Section 405(g); Cotton v. Sullivan, 2 F.3d 692, 695 (6th Cir. 1993); Wyatt v. Sec'y of Health & Human Servs., 974 F.2d 680, 683 (6th Cir. 1992), and whether the correct legal standards were applied. Landsaw v. Sec'y of Health & Human Servs., 803 F.2d 211, 213 (6th Cir. 1986).   "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way."   Cotton, 2 F.3d at 695 (quoting Casey v. Sec'y of Health & Human Servs., 987 F.2d 1230, 1233 (6th Cir. 1993)).   In reviewing a case for substantial evidence, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility."   Cohen v. Sec'y of Health & Human Servs., 964 F.2d 524, 528 (6th Cir. 1992) (quoting Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984)).

## CONCLUSIONS OF LAW

The Social Security Act authorizes payment of Disability Insurance Benefits and Supplemental Security Income to persons with disabilities.   42 U.S.C. §§ 401 et seq. (Title II Disability Insurance Benefits), 1381 et seq. (Title XVI Supplemental Security Income).   The term "disability" is defined as an

> [i]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months.

42 U.S.C. §§ 423(d)(1)(A) (Title II), 1382c(a)(3)(A) (Title XVI); 20 C.F.R. §§ 404.1505(a), 416.905(a); Barnhart v. Walton, 535 U.S. 212, 214 (2002); Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990).

In evaluating a claim of disability, an administrative law judge conducts a five-step analysis. *See* 20 C.F.R. §§ 404.1520, 416.920.  In summary, the evaluation proceeds as follows:

1)      Is the claimant engaged in substantial gainful activity?

2)      Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement and significantly limits his or her ability to do basic work activities?

3)      Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within Appendix 1?

4)      Does the claimant have the residual functional capacity to return to his or her past relevant work?

5)      Does the claimant's residual functional capacity, age, education, and past work experience allow him or her to perform a significant number of jobs in the national economy?

Id.  Here, the ALJ denied Plaintiff's claim at the fifth step.

Mount's arguments center mostly on the ALJ's RFC determination from Step Four of the sequential evaluation process (DN 14, Plaintiff's Fact & Law Summary at p. 2-10).  Specifically,

Mount claims that the ALJ's RFC determination is not supported by substantial evidence based on a failure to consider the record as a whole (Id. at p. 2).   The Commissioner's response is two-fold, arguing that (1) Mount fails to show new and material evidence showing his condition worsened after the previous ALJ's decision finding that he was not disabled; and (2) substantial evidence supports the ALJ's RFC determination (DN 15, Defendant's Fact & Law Summary at p. 5).

## A. **Drummond** Analysis

In Drummond the Sixth Circuit Court of Appeals established "that the principles of *res judicata* can be applied against the Commissioner."   126 F.3d 837, 842 (6th Cir. 1997). Accordingly, "[w]hen the Commissioner has made a final decision concerning a claimant's entitlement to benefits, the Commissioner is bound by this determination absent changed circumstances."   Id.   Furthermore, "[a]bsent evidence of an improvement in a claimant's condition, a subsequent ALJ is bound by the findings of a previous ALJ."   Id. (citing Lively v. Sec'y of Health & Human Servs., 820 F.2d 1391 (4th Cir. 1987)).   In Drummond, the Sixth Circuit held, through the application of *res judicata*, that the Commissioner was bound by its prior determination that the claimant had the RFC to perform sedentary work because, "substantial evidence was not introduced that [claimant's] condition improved significantly between the two hearing dates."   126 F.3d at 843.

In light of the holding in Drummond, the Commissioner issued an Acquiescence Ruling directing state agencies within the Sixth Circuit to follow Drummond by applying *res judicata* to a prior assessment of a claimant's RFC.   This Ruling explained the following:

> When adjudicating a subsequent disability claim with an adjudicated period arising under the same title of the Act as the prior claim, adjudicators must adopt such a finding from the final decision by an ALJ or the Appeals Council on the prior claim in determining whether the claimant is disabled with respect to the adjudicated period unless there is new and material evidence relating to such a finding or there has been a change in the law, regulations, or rulings affecting the finding or the method for arriving at the finding.

SSAR 98-4(6).   In other words, in the absence of "changed circumstances," a prior ALJ's findings and determinations are binding on a subsequent claim, even if that claim stems from an unadjudicated period.   Shell v. Colvin, No. 13-205-GFVT, 2015 WL 268861, at *4 (E.D. Ky. Jan. 21, 2015); Priest v. Soc. Sec. Admin., 3 F. App'x 275, 276 (6th Cir. 2001) (citation omitted).

Here, the ALJ correctly noted that Drummond applied to his RFC determination and that the RFC was subject to the doctrine of *res judicata* (Tr. 30).   Therefore, in accordance with Drummond and SSAR 98-4(6), ALJ Zuber's conclusion that the RFC determination in the 2010 ALJ decision was binding on her RFC determination for the unadjudicated period was proper, unless he found that Mount presented new and additional evidence or "changed circumstances."

The party seeking to avoid the application of *res judicata* bears the burden of proving changed circumstances.   Fore v. Astrue, No. 2008-208 (WOB), 2009 WL 331353, at *3 (E.D. Ky. Feb. 10, 2009) (citations omitted).   Accordingly, since Mount disagrees with the ALJ's RFC determination, it is his burden to present evidence showing that his symptoms have changed since the time of the ALJ's RFC determination.   *See* Casey v. Sec'y of Health & Human Servs., 987 F.2d 1230, 1232-33 (6th Cir. 1997).   The Sixth Circuit has held that when a plaintiff previously has been adjudicated not disabled, he must show that his condition so worsened in comparison to his earlier condition that he was unable to perform substantial gainful activity.   Id. at 1232; Collins v. Comm'r of Soc. Sec., 989 F.Supp.2d 635, 641 (S.D. Ohio 2013).

The residual functional capacity finding is the Administrative Law Judge's ultimate determination of what a claimant can still do despite his physical and mental limitations. 20 C.F.R. §§ 404.1545(a), 404.1546, 416.945(a), 416.946; Nejat v. Comm'r of Soc. Sec., 359 F. App'x 574, 578 (6th Cir 2009). The residual functional capacity finding is based on a consideration of medical source statements and all other evidence in the case record about what a claimant can do despite limitations caused by his or her physical and mental impairments. 20 C.F.R. §§ 404.1529, 404.1545(a), 404.1546, 416.929, 416.945(a), 416.946; Social Security Ruling 96-5p; Social Security Ruling 96-7p.

There is no dispute that Mount has put forth new evidence since the prior ALJ decision from 2010. ALJ Zuber determined that the new evidence presented by Mount—his own allegations and the treatment records—did not show that his conditions had worsened or significantly changed (Tr. 30). Instead, the ALJ found that the record evidence, evaluated as a whole, did not alter the record sufficiently to warrant a different finding or to dismiss the provision of *res judicata* (Id.). The undersigned will review Mount's challenges to ALJ Zuber's RFC to determine whether Mount put forth substantial evidence to prove "changed circumstances" and, ultimately, whether the ALJ's RFC was supported by substantial evidence.

### B. Challenges to Residual Functional Capacity

#### 1. Evidence of Physical Impairments

Mount makes numerous arguments against ALJ Zuber's RFC determination that Mount can perform sedentary work, claiming that his finding was not supported by substantial evidence. Mount claims that the ALJ takes an inconsistent position in regard to Dr. Lawrence H. Peters' treating opinion, Dr. Aisha Zaidi's physical examination, and Dr. Mark Allen Carter's consultative examination (DN 14, Plaintiff's Fact & Law Summary at p. 2-3). Specifically, Mount points to

conflicts between the findings of the three physicians, and argues that the ALJ does not resolve the discrepancies (Id. at p.4).

First, Mount disputes that the ALJ afforded "great weight" to Dr. Peters' treatment notes and the unsigned assessment that the ALJ and both parties attribute to Dr. Peters.   In particular, Mount feels this "great weight" is inconsistent with Dr. Peters' opinion that Mount can "sit less than 6 hours in an 8-hour workday" (Id. at p.2).   The Commissioner argues that Dr. Peters is a treating physician, thus his opinion is entitled to controlling weight (DN 15, Defendant's Fact & Law Summary at p. 6-7).

The source of medical opinion dictates the process by which the Commissioner accords it weight.   Gayheart v. Comm'r of Soc. Sec., 710 F.3d 365, 376 (6th Cir. 2013).   The regulations require that an ALJ must give more weight to opinions of treating sources since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of the claimant's medical impairments that cannot be obtained from the objective medical findings alone. 20 C.F.R. § 404.1527(d)(2).   Generally a treating physician's opinion is entitled to controlling weight.   Id.   The Administrative Law Judge must provide "good reasons" for not giving controlling weight to the opinions of the treating source.   Gayheart, 710 F.3d at 377 (6th Cir. 2013) (quoting Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004)).

Here, Dr. Peters qualifies as a treating physician, due to his ongoing relationship with Mount, and the ALJ appropriately afforded his opinion great weight (Tr. 32).   The ALJ also provided "good reasons" for giving "great weight," rather than "controlling weight," to Dr. Peters' notes and assessment.   For instance, the ALJ indicates that Mount had multiple visits with Dr. Peters since his initial determination, but also that the records through November 22, 2011 reveal

9

minimal treatment for pain management and contain subjective complaints of symptoms by Mount (Tr. 32).

The ALJ's decision to afford "great weight" to Dr. Peters' opinion, and adopt a sedentary work capacity, does not contradict Dr. Peters' finding that Mount can sit less than 6 hours in an 8-hour workday.   Sedentary work "is defined as one which involves sitting [and] a certain amount of walking and standing."   20 C.F.R. § 404.1567(a).   Generally, jobs are sedentary if "walking and standing are required occasionally and other sedentary criteria are met."   SSR 96-9p, 1996 WL 374185, at *3.   Occasional walking and standing means "occurring from very little up to one-third of the time, and would generally total no more than about two hours of an eight-hour workday."   Id.   Sitting generally must total *about* 6 hours of an 8-hour work day.   Id. (emphasis added).   Accordingly, a claimant does not need to be able to sit for a minimum of precisely 6 hours to perform sedentary work. See Krueger v. Astrue, No. 3:10-cv-01092-MO, 2011 WL 3510939, at *3 (D. Or. Aug. 9, 2011).   Sitting for less than 6 hours can rationally be interpreted as sitting for close to 6 hours, which falls within the regulatory definition of sedentary.

Here, the ALJ determined that Mount could perform sedentary work allowing for a sit/stand option (Tr. 30).   Admittedly, Dr. Peters does opine, in the unsigned assessment, that Plaintiff can sit for less than 6 hours in an 8-hour work day (Tr. 315).   However, he also opines that Plaintiff can stand and/or walk for at least two hours in an eight-hour work day (Tr. 314). Even with Peters' directive of less than six hours of sitting, Mount can still accomplish an eight-hour work day by standing and/or walking for more than two hours.[2]   Thus, Plaintiff has not

---

2 Some courts have remanded when the ALJ determines an RFC of sedentary work, but where a physician has opined that the claimant can sit for less than six hours and stand or walk for less than two hours.   See Raufova v. Chater, No. CV-94-5007D, 1995 WL 561340, at *3 (E.D. N.Y. Sept. 20, 1995); Tate v. Comm'r of Soc. Sec., No. 10-cv-14107, 2011 WL 6293556, at *8 (E.D. Mich. Nov. 18, 2011)   Mount's case is distinguishable because Dr. Peters' assessment

shown that the ALJ's RFC finding is inconsistent with the unsigned assessment attributed to Dr. Peters.

Next, Mount argues the ALJ's review of Dr. Zaidi's one-time consultative examination provides no support for the conclusion that Mount can work for 8 hours in a sedentary job (Id. at p. 3).   However, the ALJ notes in his decision that Dr. Zaidi recommended the claimant could not stand for more than 2 hours in an 8-hour workday and would be limited for prolonged sitting (Tr. 33).   The ALJ concluded that Dr. Zaidi's findings regarding work capability were similar to other reports for Mount's capacity for sedentary work capability and were consistent with a limitation on prolonged sitting with a sit/stand option (Id.).   The undersigned finds the ALJ's decision to accord great weight to Dr. Zaidi's opinion is supported by substantial evidence.

Mount also challenges the ALJ's review of Dr. Carter's one-time consultative examination.   He claims Dr. Carter's finding that "[i]t is difficult to say what his exercise capacity would be without adequate evaluation of the lumbar spine" (Tr. 401) contradicts the ALJ's RFC (DN 14, Plaintiff's Fact & Law Summary at p. 4).   The ALJ thoroughly reviewed Dr. Carter's examination notes, specifically finding that Mount could sit 6-8 hours, stand 3-4 hours, and walk 3-4 hours in an 8-hour work day (Tr. 33).   The undersigned finds the ALJ's according "great weight" to Dr. Carter's evaluation to be supported by substantial evidence.

Focusing on the opinions of Dr. Peters (a treating source), Dr. Zaidi (a one-time evaluation), and Dr. Carter (a one-time evaluation), the undersigned finds the opinions to be generally consistent in finding that the Plaintiff can sit for about 6 hours in an 8-hour work day as required by sedentary work capacity regulations.   Although these three evaluations can be considered "new" in that they were performed after the prior 2012 ALJ decision, the reports can

---

indicated that Mount can stand and/or walk for *at least* two hours of the eight hour work day (Tr. 314).

neither be considered material, nor representative of changed circumstances.   These three opinions offer little probative value because they reach the same conclusion as the prior ALJ's RFC, which allowed for sedentary work capacity with a sit/stand option.   This evidence also falls short of demonstrating that there is a reasonable probability that the ALJ would have reached a different disposition of the disability claim if presented with this evidence. *See* Sizemore v. Sec'y of Health & Human Servs., 865 F.2d 709, 711 (6th Cir. 1988).   Therefore, the ALJ's determination of sedentary work capacity in relation to Mount's physical impairments is supported by substantial evidence in the record.

### 2.   Evidence of Psychological Impairments

Mount challenges the ALJ's review of his mental impairments in the residual functional capacity determination as well (DN 14, Plaintiff's Fact & Law Summary at p. 4).   Mount challenges the ALJ's rejection of certain limitations from a psychological consultative examination performed by Dr. Thomas Miller (DN 14, Plaintiff's Fact & Law Summary at p. 5). Specifically, Mount claims error from the ALJ's rejection of Dr. Miller's limitation that Mount could not adapt or respond to pressures normally found in a day-to-day work setting due to symptoms of major depressive disorder and panic disorder (Id.) (citing Tr. 325).   Mount feels that Dr. Miller properly based his psychological evaluation on the claimant's and his mother's subjective reporting (Id. at p. 6), and that the ALJ failed to identify what makes it inappropriate to rely on statements by patients and witnesses at face value (Id.).   The Commissioner responds that the ALJ's decision to give Dr. Miller's assessment little weight was proper because Dr. Miller was not a treating physician, and the ALJ provided good reasons, supported by the record, for giving his opinion little weight (DN 15, Defendant's Fact & Law Summary at p. 12).

12

Mount cites to Blankenship v. Bowen, 874 F.2d 1116, 1121 (6th Cir. 1989), to support his argument.   Blankenship states that "[t]he report of a psychiatrist should not be rejected simply because of the relative imprecision of the psychiatric methodology or the absence of substantial documentation, unless there are other reasons to question the diagnostic techniques."[3]   874 F.2d at 1121 (citations omitted).   The Sixth Circuit has commented that rejecting a psychiatrist's opinion solely because it is based on self-reporting by a claimant would likely be inappropriate. Keeton v. Comm'r of Soc. Sec., 583 F. App'x 515, 526 (6th Cir. 2014).   Therefore, an ALJ is free under Blankenship to reject a psychiatrist's opinion, but there must be some valid reason to do so. See Kester v. Astrue, 3L07CV00423, 2009 WL 275438, at *9 (S.D. Ohio Feb. 3, 2009).

Here, Mount's reliance on Blankenship is misplaced.   The ALJ stated that Dr. Miller's opinion would not be given great weight "to the extent the limitations regarding work complexity, social interactions, and adaptation to stress, as outlined in the undersigned's current assessment of residual functional capacity, are precluded" (Tr. 35) (citing Ex. B4F).   The ALJ rejected Dr. Miller's limitations not only because they were based on subjective self-reporting by Mount, but also because they were inconsistent with his treatment notes, Mount's overall treatment history, and Mount's reported activity.   The ALJ also noted that the extreme limitations deduced by Dr. Miller were inconsistent with both Dr. Peters' evaluation and records from Portland Family Health Center (Tr. 34).

For instance, Dr. Miller relied on Mount's complaints of poor concentration, lack of focus, and mental impairments, but during testing found that Mount could remember four digits forward,

---

3 Although Blankenship refers only to "psychiatrists," the regulations provide that clinical signs of mental impairment are "typically assessed by a psychiatrist or psychologist and/or documented psychological tests."   20 C.F.R. Part 404, Subpart P, App. 1, § 12.00(B).   Further, the statutes and regulations do not suggest that a psychologist's evaluation is to be given less weight than a psychiatrist.   Crum v. Sullivan, 921 F.2d 642, 645 (6th Cir. 1990).   Therefore, Dr. Miller's psychological consultation will be treated the same as a psychiatric consultation would be treated, and the undersigned will evaluate Mount's argument under Blankenship,

three digits backward, and that his long term memory appeared to be adequate (Tr. 319-20, 325). Dr. Miller also found that Plaintiff would be capable of managing his own benefits if they were awarded (Tr. 326).   Additionally, the ALJ referred to the fact the Mount drove to his appointment and that his memory, knowledge, abstract thinking, and judgment were all intact (Id.).   These inconsistencies support the ALJ's decision to give little weight to Dr. Miller's limitations.

Relatedly, the ALJ appropriately rejected Dr. Miller's limitations because Dr. Miller is not a treating physician.   As mentioned previously, the regulations indicate that treating source opinions must receive "controlling weight" when two conditions are met.   20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2), 416.927(c)(2); Gayheart, 710 F.3d at 376.   However, the law is well established that this "treating source rule" applies only to a "medical opinion" rendered by an "acceptable medical source" who has or has had, an ongoing treatment relationship with the claimant.    20 C.F.R.  §§  404.1502,  404.1513(a)(1),404.1527(a)(2)  and  (c),  416.902, 416.913(a)(1), 416.927(a)(2) and (c); Social Security Rule 96-2p; Gayheart, 710 F.3d at 365-76.

Opinions from non-treating and non-examining sources are never assessed for "controlling weight."   Gayheart, 710 F.3d at 376. Consequently, a one-time consultative examiner is not due the deference that a treating physician receives, and the ALJ is not required to provide "good reasons" for affording these opinions little weight.   Further, an ALJ can reject the opinion of a consulting psychologist based upon the ALJ's interpretation of the psychological findings and lay evidence.   See Crisp v. Sec'y of Health & Human Servs., 790 F.2d 450, 452-53 (6th Cir. 1986).

Dr. Miller was a consulting psychologist who met with Mount on one occasion.   He is therefore not entitled to the deference accorded to the findings of treating physicians. The undersigned finds that the ALJ's decision to reject certain limitations from Dr. Miller's opinion was supported by substantial evidence and comports with applicable law.

14

Similarly, Mount challenges the ALJ's decision to give Dr. Andrew B. Jones' assessment little weight (DN 14, Plaintiff's Fact & Law Summary at p. 7).  Mount objects to the ALJ's general statement that Dr. Jones' report had "overall inconsistency with the objective record as a whole" (Id.) (citing Tr. 35).   Additionally, Mount challenges the ALJ's determination that Mount's completing 12th grade, having a driver's license, being adept at playing the guitar, and having held semi-skilled jobs, conflicts with Dr. Jones' conclusions (Id.).   On the other hand, the Commissioner argues that the ALJ gave appropriate weight to Dr. Jones' consultative examination (DN 15, Defendant's Fact & Law Summary at p. 14).

The ALJ ordered additional consultative testing from Dr. Jones in order to reconcile the discrepancies between Dr. Miller's consultative examination and the prior ALJ's decision (Tr. 35). As with Dr. Miller, Dr. Jones was a one-time examiner, and thus, his opinion was not entitled the deference given to treating sources.   *See* Barker, 40 F.3d at 794; Crisp, 790 F.2d at 452-53.

Mount's objection to the ALJ's generalized statement that Dr. Jones' report had "overall inconsistency with the objective record as a whole" is also meritless.   The ALJ's evaluation of Dr. Jones' report was not simply a generalized statement.   In fact, the ALJ thoroughly evaluated Dr. Jones' report using very specific examples of anecdotes from the report that contradicted the objective record.   The ALJ noted that Dr. Jones found Mount was of mild mental retardation because of his WAIS Full Scale IQ score of 57, but that Mount's completion of 12th grade, ability to attain his driver's license, previous work at a semi-skilled job, and ability to play the guitar contradict Jones' finding (Tr. 35).   Although the ALJ does not identify how these abilities reflect on major depressive disorder or anxiety disorder, Mount's abilities do serve as objective evidence to contradict Dr. Jones' findings and serve as valid reasons for the ALJ to accord Dr. Jones' report little weight.

15

Mount claims that the ALJ's recitation of his abilities is not supported by objective evidence from the record (DN 14, Plaintiff's Fact & Law Summary at p. 7).   For instance, Mount argues that the ALJ's statement that Mount completed the twelfth grade as a basis for rejecting his IQ score is a gross generalization (Id. at p. 8).   However, it is undisputed that Mount graduated from high school, meaning he completed the twelfth grade (Tr. 251, 320, 348).   Even when test results indicate a claimant has an IQ score qualifying for mental retardation, an ALJ can still determine the claimant is not mentally retarded based on evidence that the claimant appears to function at a level exceeding his test scores.   Daniels v. Comm'r of Soc. Sec., 70 F. App'x 868, 872-73 (6th Cir. 2003).

Mount also claims that "[o]btaining a driver's license does not require the ability to read and understand English" (DN 14, Plaintiff's Fact & Law Summary at p. 8).   Unfortunately, Mount undercuts his own argument by admitting he can read, understand, and write more than his name in English (Tr. 249).   Mount takes issue with the ALJ's statement that he is adept at playing the guitar (Tr. 35).   Again, the record evidence undercuts Mount's argument, because his mother reported that "[h]e used to be very good" at playing the guitar (Tr. 322).   Lastly, Mount disagrees with the ALJ's characterization that he has past semi-skilled work (DN 14, Plaintiff's Fact & Law Summary at p. 8).   The impartial vocational expert at Mount's hearing testified that Mount's previous work as a carpet cleaner had an SVP of 4, which qualifies as "semi-skilled" (Tr. 71).   A vocational expert's testimony that a claimant's prior work is semi-skilled can be a relevant factor in assessing whether the claimant suffers from mental retardation.   Knapp v. Comm'r of Soc. Sec., No. 2:10-cv-388, 2011 WL 3566842, at *3 (S.D. Ohio July 21, 2011).   The ALJ appropriately relied on this objective evidence in determining that Dr. Jones' report was inconsistent to the overall record.

16

Mount also challenges the ALJ's determination that Dr. Jones' testing suggested some over reporting of symptoms (DN 14, Plaintiff's Fact & Law Summary at p. 8-9).   Specifically, Mount claims, "[a]t no point does Dr. Jones state that Mount is malingering . . . [t]here is no basis in the record for the ALJ to conclude Mount malingered or exaggerated as the examining doctor provided an explanation and the ALJ provided no medically-based rationale for rejecting the explanation" (Id.).

The ALJ found that Dr. Jones explicitly noted that Mount's testing seemed to suggest some over-reporting of his symptoms (Tr. 35).   Indeed, Dr. Jones noted in regard to findings from the SA-45 that "the profile was non-differentiating and possibly purported a 'plea for help' or even an over-embellishment of complaints" (Tr. 421).   Dr. Jones also noted that Mount's response of "I don't remember anything" during the recognition portion of the Rey 15 examination to appraise malingering was "somewhat atypical" (Tr. 421-22).   Later in his report summary, Dr. Jones again indicated that findings from the Rey 15 were "possibly indicative of symptom amplification and embellished memory dysfunction" (Tr. 424).   Dr. Jones made no conclusion that Mount was malingering, but did indicate a possibility of over-reporting.   Therefore the ALJ's statement that Dr. Jones' report indicated possible over-reporting of symptoms was a valid point to consider in weighing Dr. Jones' evaluation.

Finally, Mount claims that the ALJ did not explain how the discrepancies between Dr. Miller's opinion and the prior ALJ's residual functional capacity which necessitated Dr. Jones' evaluation were resolved (DN 14, Plaintiff's Fact & Law Summary at p. 9).   Mount argues that because discrepancies existed, there was not substantial evidence in the record before Dr. Jones evaluation (Id.).   Mount believes it naturally follows that the ALJ's decision to give Dr. Jones'

17

report "little weight," means there cannot be substantial evidence to support the ALJ's unfavorable decision (Id.).

As mentioned previously, in order to deviate from a prior ALJ's residual functional capacity, and overcome the application of *res judicata*, the claimant must prove new and material evidence or changed circumstances. Drummond, 126.F.3d at 842-43; SSAR 98-4(6).   Simply because ALJ Zuber requested Dr. Jones' evaluation to resolve discrepancies between Dr. Miller's evaluation and the prior ALJ's residual functional capacity determination, did not foreclose the ALJ's ability to afford the requested evaluation "little weight."   The ALJ appropriately determined that both Dr. Miller's limitations and Dr. Jones' evaluation should be afforded "little weight" based on the detailed reasons that the undersigned set forth above.   Because the ALJ found both evaluations to be inconsistent with the record as a whole, Mount did not satisfy his burden of proving new and material evidence or changed circumstances.   Thus, the ALJ's decision to apply *res judicata* to the prior ALJ's residual functional capacity determination, despite discrepancies in the additional evaluations, was supported by substantial evidence.

Mount challenges the ALJ's full acceptance of the state agency psychologist's opinions because they did not have all of the evidence before them (DN 14, Plaintiff's Fact & Law Summary at p. 9-10).   The regulations provide that "[s]tate agency medical and psychological consultants . . . are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation."   *See* 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i).   A non-examining physician's report is entitled to less weight than the reports of other physicians who examined the claimant.   Allen v. Califano, 613 F.2d 139, 145 (6th Cir. 1980).   When a non-examining source has not reviewed a significant portion of the record, and the ALJ fails to indicate that he has "at least considered [that] fact before giving greater weight" to the reviewing

18

doctor's opinion, the ALJ's decision cannot stand.   Blakely v. Comm'r of Soc. Sec., 581 F.3d 399, 409 (6th Cir. 2009).   But when the opinions of non-examining State agency medical/psychological advisors are consistent with the record, those opinions represent substantial evidence to support the ALJ's decision.   20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(f); Social Security Ruling 96-6p, 1996 WL 374180, at *2, 3; Atterbery v. Sec'y of Health & Human Servs., 871 F.2d 567, 570 (6th Cir. 1989).

Here, the ALJ found that the analysis of State agency psychologist, Dr. Jay Athy, was persuasive (Tr. 35).   Dr. Athy performed his review of the record on August 8, 2010, and adopted the prior ALJ's RFC determination (Tr. 348).   Admittedly, Dr. Athy did not evaluate the entire record because he performed his review before Dr. Carter's consultative examination, Dr. Jones' consultative examination, and additional treatment by Dr. Peters and the Portland Family Health Center (Tr. 348, 355, 375, 398, 412).   It is fair to conclude that Dr. Athy did not review a significant portion of the record.   Nevertheless, the ALJ considered both Dr. Carter's and Dr. Jones' one time evaluations in great detail before determining that these non-treating examinations were entitled to little weight.   The ALJ was also sufficiently specific to make clear that he realized the extent and nature of Dr. Peters' treating relationship with Mount, while noting that the new records from Dr. Peters contained "minimal treatment" (Tr. 31).   Cf. Fisk v. Astrue, 253 F. App'x 580, 586 (6th Cir. 2007) (finding that no "meaningful review" could be conducted because the ALJ did not make clear the nature and extent of the treating physician relationship).

Further, the ALJ appropriately gave weight to Dr. Athy's evaluation because it was consistent with the record.   In his assessment, Dr. Athy considered Mount's reported activities, limitations, and medications (Id.).   Of note, Dr. Athy determined that Mount was "moderately limited" in five areas: (1) the ability to carry out detailed instructions; (2) the ability maintain

19

attention and concentration for extended periods; (3) the ability to interact appropriately with the general public; (4) the ability to accept instructions and respond appropriately to criticism from supervisors; and (5) the ability to set realistic goals or make plans independently of others (Tr. 346-47).   However, Dr. Athy found Mount was "not significantly limited" in all other areas (Id.). When Dr. Athy reviewed Dr. Miller's consultative examination report, he found the report was not consistent with the objective findings of the record (Tr. 348).   Dr. Athy also found Mount's statements of limitations with memory, concentration, completing tasks, understanding, following instructions, and getting along with others at times were partially credible (Id.).

Dr. Athy's findings are bolstered by evidence in the record from the treatment notes of both Dr. Peters and physicians from the Portland Family Health Center.   For instance, Dr. Peters noted that Mount's medication was helpful (Tr. 354) and that Mount at times had a stable mood (Id.) but could also be moody with highs and lows (Tr. 375).   Dr. Peters additionally noted Mount's poor concentration, anxiety, and feeling panicked (Tr. 353, 376).   Although the treatment notes from Portland Family Health indicate diagnoses of Bipolar Disorder, Post-Traumatic Stress Disorder, and Generalized Anxiety (Tr. 379, 385, 395), Mount's "appropriate mood and affect" were consistently noted (Tr. 362, 383, 390, 393).   Portland Family Health Center's notes also indicated in periodic status reports that Mount's condition was unchanged from reports on November 29, 2011 and December 13, 2011 (Tr. 387, 396) and "improved" on January 17, 2012 (Tr. 380).   The undersigned finds that because Dr. Athy's opinion is supported by the record, the ALJ's decision to give Dr. Athy's opinion persuasive weight is supported by substantial evidence.

Dr. Miller's examination, Dr. Jones' examination, and Dr. Athy's evaluation can be considered "new" in that they were performed after the prior 2012 ALJ decision, however the opinions can neither be considered material, nor representative of changed circumstances.   These

three opinions offer little probative value because of their inconsistencies and reliance on Mount's subjective reports.   This evidence also falls short of demonstrating that there is a reasonable probability the Secretary would have reached a different disposition of the disability claim if presented with this evidence. *See* Sizemore v. Sec'y of Health & Human Servs., 865 F.2d 709, 711 (6th Cir. 1988).   Therefore, the ALJ's limitations from his RFC determination, in relation to Mount's psychological impairments, are supported by substantial evidence in the record.

### 3.   Challenges to ALJ's Credibility Determination

Mount attempts to make a number of arguments against the ALJ's evaluation of his credibility (Id. at p.4-5) by claiming that the ALJ's credibility determination is not supported by substantial evidence (Id. at p. 5).

When the ALJ evaluates credibility, a claimant's statement that he is experiencing pain or other symptoms will not, taken alone, establish that he is disabled. *See* 20 C.F.R. § 404.1529(a); Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 530 (6th Cir. 1997); Duncan v. Sec'y of Health & Human Servs., 801 F.2d 847, 853 (6th Cir. 1986).   There must be medical signs and laboratory findings which show the existence of a medical impairment that could reasonably be expected to produce the pain alleged.   Walters, 127 F.3d at 530; Duncan, 801 F.2d at 854.   In making his evaluation, the ALJ considers objective medical evidence, as well as other factors such as evidence of daily activities, the frequency and intensity of pain, medication taken and any resulting side effects, and any other measures taken to alleviate the pain.   *See* 20 C.F.R. §§ 404.1529(c)(2), (3), 416.929(c)(2), (c)(3).

In determining whether a claimant suffers from debilitating pain and other symptoms, the Sixth Circuit applies the two-part test set forth in Duncan, 801 F.2d at 853.   First the Administrative Law Judge must examine whether there is objective medical evidence of an

underlying medical condition.   Duncan, 801 F.2d at 853.   Here, the ALJ concluded there was objective evidence that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms (Tr. 31).   Next, the Administrative Law Judge must determine: "(1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical opinion is of such severity that it can reasonably be expected to produce the alleged disabling pain."   Id.   Here, the ALJ found that Mount's "statements concerning the intensity, persistence, and limiting effects of [his] symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment" (Tr. 31).

The ALJ offered several reasons supporting his decision to discount Mount's credibility. First, the ALJ considered the conservative nature of Mount's treatment and evidence indicating that his condition showed some improvement with medication (Id.).   Villareal v. Sec'y of Health & Human Servs., 818 F.2d 461, 463 (6th Cir. 1987) (affirming ALJ's adverse credibility finding where ALJ reasoned Plaintiff responded well to treatment that was conservative in nature).   The ALJ noted Mount did not require hospitalization for either physical or psychiatric conditions and did not require emergent care (Tr. 31-32).   See Hemingway ex rel. Hemingway v. Comm'r of Soc. Sec., No. 2:07-cv-27, 2008 WL 679032, at *11 (S.D. Ohio Mar. 12, 2008) (considering claimant's lack of hospitalization in discounting claimant's allegations of disabling pain).   Additionally, Mount did not require surgical intervention, but was treated with medication (Tr. 31-32).   Further, Mount's testimony that his medication caused flu-like side effects (Tr. 52) was contradicted by Dr. Peters' notes indicating no side effects or discomfort with the medication (Tr. 313).   See Wells v. Apfel, 234 F.3d 1271 (6th Cir. 2000) (unpublished decision) (finding contradiction where Plaintiff

testified his leg gave out on him "every once in a while," "two to three times a month," and "about once a day").

Additionally, the ALJ considered evidence indicating that Mount possibly over-reported his symptoms (Tr. 35).    Dr. Jones observed that testing suggested some over-reporting or embellishment of symptoms and observed that Plaintiff's pain behavior was not consistent with his allegations (Tr. 424).    Over-reporting or exaggerating can cast doubt on credibility.    Tonapetyan v. Haller, 242 F.3d 1144, 1148 (9th Cir. 2001).    Concern about possible malingering at Dr. Jones' consultative examination supports the ALJ's credibility determination.    See Clay v. Barnhart, 417 F.3d 922, 930 n. 2 (8th Cir. 2005) (evidence of malingering cast doubt on claimant's motivations and credibility).    Consequently, the ALJ validly considered Mount's potential over-reporting of symptoms in making his credibility determination.

The ALJ also took into account Plaintiff's daily activities in evaluating credibility, finding that Plaintiff could prepare simple meals, do light household chores, drive a car, listen to music, watch television, and manage his bills if needed (Tr. 36).    See Blacha v. Sec'y of Health & Human Servs., 927 F.2d 228, 231 (6th Cir. 1990) (finding that the ALJ may consider household and social activities in evaluating complaints of disabling pain).

The ALJ also noted that the record included some evidence of non-compliance with Plaintiff's medication regimen (Tr. 34).    Mount specifically claims this finding is not supported by medical evidence in the record (Id.).    Citing to Renneker v. Astrue, No. 1:10-cv-386, 2011 WL 2559515, at *13 (S.D. Ohio Apr. 4, 2011), Mount argues the ALJ was erroneous in not questioning him at the hearing with regard to his noncompliance to determine whether there was good cause for Mount's actions (Id.).

The undersigned rejects Mount's argument.   The ALJ properly identified evidence in the record indicating some non-compliance of behalf of Mount with his medication and treatment (Tr. 34).   For instance, Dr. Peters noted that Plaintiff needed to better follow his treatment instructions (Tr. 377).   Records from the Portland Family Health Center also demonstrated that Mount refused to take medication to treat his mental impairments including Lithium, Depakote, and Seroquel (Tr. 394-95).   Additionally, Dr. Larson's treatment notes indicated that Mount felt his "anxiety [was] a huge barrier to change and [was] unsure he want[ed] to work it at this time" (Tr. 385).

Social Security Ruling 82-59 governs whether an Administrative Law Judge must question a claimant about non-compliance with treatment or medication at the administrative hearing. The ruling provides that a claimant who is found to have disability under the five step analysis, but who does not follow treatment prescribed by his or her physician that can restore her ability to work, must have a good reason for not following that treatment in order to be found disabled. Ranellucci v. Astrue, 2012 WL 4484922, at *10 (M.D. Tenn. Sept. 27, 2012).   Therefore, failure to follow prescribed treatment becomes a determinative issue only if the claimant's impairment is found to be disabling under steps one through five and is amenable to treatment expected to restore her ability to work.   Hester v. Sec'y of Health & Human Servs.,886 F.2d 1315 (6th Cir. 1989) (unpublished decision).   Social Security Ruling 82-59 is not applicable to the instant case because the ALJ did not find that Mount's impairment was disabling under steps one through five.

Further, Courts in this Circuit have found SSR 82-59 inapplicable "in cases where the ALJ has considered the noncompliance only as one factor in assessing the claimant's credibility or in cases where no prior disability ruling was made by an ALJ that was thereafter undone by a claimant's noncompliance with treatment recommendations."   Williams v. Comm'r, Soc. Sec. Admin., No. 3:13-CV-1276, 2014 WL 1406433, at *13 (N.D. Ohio Apr. 10, 2014) (citing Kinter v.

Colvin, No. 5:12CV490, 2013 WL 1878883, at *9 (N.D. Ohio Apr. 18, 2013).  Here, as mentioned above, the ALJ found that Mount's potential non-compliance with his medication was just one factor among many that diminished his credibility (Tr. 31-34).  Therefore, SSR 82-59 does not apply to Mount's case and the ALJ properly evaluated Mount's credibility based on a consideration of the entire case record.  *See* Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 247 (6th Cir. 2007).

Further, an ALJ's findings based on the credibility of the applicant "are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility."  Walters, 127 F.3d at 531 (citation omitted).  The undersigned finds that the ALJ's conclusion that Mount's allegations were not entirely credible is supported by substantial evidence in the record and comports with applicable law.

### C.  Combined Effect of Impairments

Mount argues that although the ALJ considered his combination of impairments at step three of the sequential evaluation process, the ALJ failed to consider the combined effect of his orthopedic and mental illnesses prior to step four (DN 14, Plaintiff's Fact & Law Summary at p. 10).  The Commissioner responds the ALJ's decision reflects that he did consider the impairments in combination (DN 15, Defendant's Fact & Law Summary at p. 22-23).

A disability may result from multiple impairments, no one of which alone would constitute a full disability.  Loy v. Sec'y of Health & Human Servs., 901 F.2d 1306, 1310 (6th Cir. 1990). However, an Administrative Law Judge's individual discussion of multiple impairments does not imply that he failed to consider the effect of the impairments in combination, where the Administrative Law Judge specifically refers to a "combination of impairments" in their factual findings.  Gooch v. Sec'y of Health & Human Servs., 833 F.2d 589, 592 (6th Cir. 1987).

Mount admits that the ALJ considered his combination of impairments at Step Three (Finding No. 5) when the ALJ states "[t]he claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments" (DN 14, Plaintiff's Fact & Law Summary at p. 10) (citing Tr. 28).  Instead, Mount claims the ALJ failed to consider his combination of impairments "prior to Step Four."

Here, the ALJ's finding No. 6, which includes the RFC determination, expressly refers to "the claimant's medically determinable impairments" (plural) (Tr. 31).  Further, the ALJ discussed both the evidence relating to Mount's physical impairments (Tr. 32-34) and mental/psychological impairments (Tr. 34-36).  Therefore, the ALJ's finding at the fourth step reflects that the ALJ considered all of Mount's impairments in combination.

### D.  Finding No. 9

Mount objects to Finding No. 9 claiming "[a]lthough Mount has completed 12 years of education, the psychological evaluation by Dr. Jones does not support this conclusion" (DN 14, Plaintiff's Fact & Law Summary at p. 10). It is well-established that "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." United States v. Layne, 192 F.3d 556, 566 (6th Cir. 1999) (quoting McPherson v. Kelsey, 125 F.3d 989, 995-96 (6th Cir. 1997)); *see also* Brindley v. McCullen, 61 F.3d 507, 509 (6th Cir. 1995) (observing that "[w]e consider issues not fully developed and argued to be waived").  Since Mount offers no development of his argument, the undersigned deems his objection to Finding No. 9 waived.

### E.  Finding Nos. 10-12

Mount objects to Finding No. 10, Finding No. 11, and Finding No. 12 because he believes the ALJ's evaluation in Finding No. 6 was erroneous (DN 14, Plaintiff's Fact & Law Summary at

p. 10).   Since Mount's arguments are based on his previous challenges to the ALJ's findings, which have been evaluated above, the undersigned concludes there is no merit to Mount's additional challenges.


<u>ORDER</u>

**IT IS HEREBY ORDERED** that the final decision of the Commissioner is **AFFIRMED.**

This is a final and appealable Order and there is no just cause for delay.


Copies:          Counsel

27